PENNSYLVANIA ORTHOPAEDIC SO-
CIETY On Behalf of Its Members and
All Others Similarly Situated Individ-
uals

v.

INDEPENDENCE BLUE
CROSS, et al.

Robert P. Good, M.D., On Behalf
of Himself and All Others
Similarly Situated

v.

Independence Blue Cross, QCC Insur-
ance Company, Keystone Health Plan
East, Inc., AmeriHealth HMO, Inc.
and AmeriHealth Inc.

John R. Gregg, M.D. and Vincent J. Di-
Stefano, M.D., on Behalf of Themselves
and All Others Similarly Situated

v.

Independence Blue Cross, QCC Insur-
ance Company, Keystone Health Plan
East, Inc., AmeriHealth HMO, Inc.
and AmeriHealth, Inc.

Appeal of: Objectors, Class Members
and/or Enjoined Persons or Entities,
the Medical Society of the State of
New York, the South Carolina Medi-
cal Association, the Tennessee Medi-
cal Association, the Medical Society
of New Jersey, Joseph Fallon, M.D.,
Terrence R. Malloy, M.D. and Bruce
Zakheim, M.D.

Appeal of: American Medical
Association.

Appeal of: Objectors, Martin D. Tri-
chtinger, M.D., William W. Lander,
M.D., Nancy S. Roberts, M.D., Beverly
K. Dolberg, M.D. and the Pennsylva-
nia Medical Society.

Appeal of: Objector and Class Member
Louis P. Bucky, M.D.

Appeal of: Objector Class Member
Rosalind Kaplan, M.D.

Superior Court of Pennsylvania.

Argued May 24, 2005.

Filed Oct. 12, 2005.

Joe R. Whatley, Jr., Birmingham, AL, for Class Members and/or Enjoined Persons, appellant.

David H. Weinstein, Philadelphia, for Kaplan, appellee.

Edward F. Mannino, Philadelphia, for Independence Blue, appellee.

Peter J. Hoffman, Philadelphia, for Pennsylvania Medical Society, appellee.

Philip H. Lebowitz, Philadelphia, for American Medical Association, appellee.

David S. Senoff, Jerome M. Marcus and Jonathan Auerbach, Philadelphia, for Pennsylvania Orthopaedic Society, appellee.

BEFORE: DEL SOLE, P.J., BENDER and PANELLA, JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 Presented for our review are five consolidated appeals from a trial court order entered in a class action case. The order at issue made certain rulings regarding objections to a proposed class action settlement, membership in the class and the invalidity of prior timely "opt-outs." In addition the order granted a limited injunction enjoining certain communication to class members. Upon review we find appealable only that portion of the trial court order which granted the defendants' request to temporarily restrain communications. The remaining rulings of the trial court contained in the order, which are challenged by various parties in these appeals, were interlocutory and are not appealable.

¶ 2 The underlying action was commenced by the filing of three separate lawsuits against various health insurance companies or health maintenance organizations over a dispute regarding the appropriate reimbursements paid to health care providers for medical care provided to patient subscribers. The plaintiffs and defendants later jointly moved for preliminary approval of a class action settlement which the trial court granted, conditionally certifying the class for purpose of settlement. Notice was sent to the class and/or published advising members they could choose to opt out of the class action settlement agreement. Various individuals, practice groups and professional societies filed objections to the class action settlement. The defendants' filed an Opposition to Objection to the Class Action Settlement and a Motion to Invalidate Opt-Outs. In addition the defendants' motion sought approval of a corrective notice to certain class members and a temporary restraining order seeking to limit communications concerning the class settlement agreement. A fairness hearing was held follow-

ing which the trial court entered a multifaceted order which is the subject of this appeal.

¶ 3 The order dated April 22, 2004, granted certification of the class and approval of the settlement, overruling all objections to the settlement agreement. It further granted a motion to invalidate the election previously made by those who had chosen to opt out of the class. In accordance therewith it required the parties to disseminate correspondence and notice to those class members who had submitted a timely opt-out advising them that their prior opt-out had been invalidated and declared void and informing them of a new opportunity to opt out of the class during a period ending June 9, 2004. In accordance with the terms of the settlement agreement, if more than 6 percent of the settlement class members timely and properly exercised an opt-out, the released parties would have a right to terminate and withdraw from the settlement agreement. The order further provided that from its entry until midnight, June 9, 2004, certain named societies and associations and "all others acting by or through them and/or on their behalf" were "enjoined" from communicating with class members about the settlement unless the communication was first approved by the trial court. Order of Court, 5/22/04. Finally, the order provided that the trial court would continue to consider whether fees and costs should be paid to remedy prior improper communication to class members. Five appeals from this order were filed.

¶ 4 After the time for the second opt-out passed, the trial court entered an order dated September 1, 2004, captioned "Final Order Judgment and Discontinuance with Prejudice." Therein the history of the case was recounted, including the trial court's action and reasoning for invalidating prior opt-outs. The trial court order provided a definition of the settlement class and of the term "providers." The trial court ruled that there were 2,043 opt-outs submitted during the second opt-out period which were postmarked on or before June 9, 2004, and were signed and submitted by a class member who had timely submitted an opt-out during the first period. The trial court included the names of those class members who were to be excluded from the settlement agreement by virtue of their valid opt-outs as an attachment to its order. It then ruled that all other potential class members were to be included in the settlement class and to "be conclusively and forever bound by the Class Action Settlement Agreement." Order of Court, 9/1/04, at 6. The order further set forth a figure as the amount of attorneys' fees and costs recoverable and announced incentive awards to class representatives. No appeal was taken from this order.

¶ 5 Initially we address the appealability of the matter before us. The appeals in this matter were taken following the trial court's April 22, 2004, order ("the April order"). The April order was not final. While it approved the settlement agreement, it also invalidated the existing opt-outs and allowed for a new opt-out period. Depending on the number of individual members of the class who elected to opt out at the conclusion of the second opt-out period, the defendants had the ability to void the settlement agreement. Thus, the members of the class were not yet determined and the entire settlement agreement had the potential of being voided at the discretion of one of the parties upon notice of the number of valid opt-outs in the new period following the April order. Accordingly, the April order was not final and appealable pursuant to Pa.R.A.P. 341(b), as it did not terminate the action or dispose of all parties and all claims.

¶ 6 Appellees argue that Pa.R.A.P. 905(a) mandates that the notices of appeal filed following the April order be considered timely and properly filed from the September 1, 2004, final order which followed. The Rule provides in pertinent part:

A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.

Pa.R.A.P. 905(a).

¶ 7 Appellees posit that the application of this Rule makes the instant appeals proper and timely. Appellees' position is untenable. The Rule does not abrogate the requirements of finality. Rather, it is applied in those situations where an appeal is filed after a trial court makes a final determination, but before the official act of entering judgment has been performed. In these circumstances the Rule acts to perfect a premature appeal. *See Jones v. Rivera*, 866 A.2d 1148, 1149 n. 1 (Pa.Super.2005) (applying Rule 905(a) to consider timely an appeal filed after the denial of post-trial motions where judgment was subsequently entered on the docket); *Caruso v. Medical Professional Liability Catastrophe Loss Fund*, 858 A.2d 620, 623 n. 5 (Pa.Super.2004) (deeming the appellants' premature appeal from denial of motion to mold the verdict timely filed on the date judgment was entered on the docket pursuant to the appellants' praecipe, citing Rule 905(a)); *Sobien v. Mullin*, 783 A.2d 795, 797 n. 1 (Pa.Super.2001) (finding an appeal filed following the denial of post-trial motions and an award of delay damages was perfected when judgment was entered on the docket).

¶ 8 In this case the April order was not an announcement of a final determination which required only the entry of a formal judgment to become appealable. Rather, the April order only preliminarily approved the settlement, which, as described above, was capable of being voided at the discretion of the defendants should the opt-outs exceed the stated percentage. The fact that the stated percentage of opt-outs was ultimately not reached and that the settlement agreement was not voided did not render the April order final and an appeal therefrom proper upon entry of the "final order" and "judgment" entered in September. Simply stated, the appeals in this matter were filed prematurely following a non-final order. Appellants' failure to file timely appeals following the entry of the final order in this matter in September forecloses appellate review of the trial court's ruling with the exception of that portion of the April order which limited communications in the matter.

¶ 9 Pennsylvania Rule of Appellate Procedure 311(a)(4) does permit interlocutory appeals as of right from an order which grants an injunction. The relevant part of the April order in this case states:

Effectively immediately upon entry of this Order, and continuing thereafter until Midnight, June 9, 2004, the New Jersey Lawyers, medical societies/associations, including, but not limited to, the Pennsylvania Medical Society (hereinafter "PMS") and the Medical Society of New Jersey (hereinafter, "MSNJ"), and each of their partners, shareholders, attorneys, employees, agents, servants, representatives, members and all others acting by or through them and/or on their behalf are enjoined from communicating directly or indirectly or through or in concert with others with, or in any manner intended to reach, class members about the Class Action Settlement unless the communication is first approved by this court.

Order of Court, 5/22/04, at ¶ 6 (footnote naming New Jersey Lawyers omitted).

¶ 10 An order which grants a request to enjoin certain conduct, as was done by the trial court in the April order, is an interlocutory matter specifically authorized for appeal as of right by Rule 311(a)(4). Injunctive relief is considered an extraordinary equitable remedy and it is to be granted only where the moving party has established that immediate and irreparable harm, which cannot be compensated by damages, will result if the injunction is denied. *DiLucente Corp. v. Pennsylvania Roofing Co.*, 440 Pa.Super. 450, 655 A.2d 1035, 1037 (1995) (citation omitted). Furthermore, the party seeking to enjoin certain conduct must demonstrate that greater injury would result by refusing the injunction than by granting it. *Id.*

¶ 11 The trial court found that the appropriate standard was met when it issued its order based on its finding that communications sent by certain lawyers and medical associates to members of the settlement class were false, misleading, and confusing, and that it was likely that the misleading communications were effective in procuring opt-outs. Trial Court Opinion, 5/22/04, at 99, 109. The trial court concluded that the limitation on speech imposed by its order would further the compelling interest of ensuring that the class members' decisions to participate or to opt out would be made based on an independent analysis of their own self interest. *Id.* at 113. The trial court decided that it had an obligation to ensure that the class was not influenced and that it had the authority under Pa.R.C.P. 1713 to impose a temporary and limited restraint on speech.

¶ 12 Pennsylvania Rules of Civil Procedure governing class actions allow for a trial court to make appropriate orders to control a case. Rule 1713 provides that notice to members of the class "may be given in such manner as the court may direct" "for the protection of the members of the class." Pa.R.C.P. 1713(a)(2). The explanatory comment to the rule notes that it "copies Federal Rule 23(d)," with the exception of a federal provision regarding an amendment of the pleadings. *See* Pa.R.C.P.1712, Explanatory Comment—1977.

¶ 13 A seminal case in which the United States Supreme Court discussed Federal Rule 23 is *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). In *Gulf Oil*, the District Court had granted a temporary restraining order limiting communications between plaintiffs' counsel and the putative class, without making any findings of fact. The Supreme Court noted that "(b)ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id.* at 100, 101 S.Ct. 2193. However, the Supreme Court ultimately reversed the District Court's order and ruled that the District Court abused its discretion where it made no factual findings and provided no evidence that it carefully weighed competing interests thus revealing no grounds to conclude that it was necessary or appropriate to impose the order.

¶ 14 The Supreme Court stated:

[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.

*Id.* at 102, 101 S.Ct. 2193. It ruled that a court may not exercise the power to restrict communication "without a specific record showing by the moving party of the particular abuses by which it is threat-

ened." *Id.* (citing *Coles v. Marsh,* 560 F.2d 186, 189 (3d Cir.1977)).

¶ 15 The trial court in the instant case held a hearing and then made a record finding that members of the settlement class were sent communications which were false, misleading and confusing. The trial court listed six categories of misleading communications, those which: (1) gave a false impression of the scope of relief provided by the settlement; (2) gave a false impression of the scope of the release; (3) made misleading comparisons to the settlement in another class action case; (4) failed to inform the class members of the drafters' pecuniary interest in the matter; (5) misrepresented that the communications were from a named defendant, AmeriHealth; and (6) failed to include the trial court's approved Notice and failed to provide contact information for counsel in the litigation. Trial Court Opinion, at 99. The trial court in its opinion set forth specific examples of troubling communications in each of the six categories. *Id.* at 100–108.

¶ 16 The Supreme Court in *Gulf Oil* recognized that misleading communications can have an adverse effect on the fair conduct of class action litigation. The Court quoted *Waldo v. Lakeshore Estates, Inc.* 433 F.Supp. 782, 790–91 (E.D.La. 1977), as stating: "[unapproved] communications to class members that misrepresent the status or effect of the pending action also have an obvious potential for confusion and/or adversely affecting the administration of justice." *Gulf Oil,* 452 U.S. at 101, 101 S.Ct. 2193. The trial court in this instance painstakingly identified the misleading communications which were sent in letters, facsimiles and through websites. It detailed how certain statements gave false impressions by not mentioning other relevant facts, thus leaving the recipient with an invalid and unfair description of the terms of the settlement agreement or of the source of the communication and/or its interest in the litigation. The trial court noted that other communications improperly implied a more advantageous source of relief was available in separate class action litigation. The trial court properly recognized that such conduct compromised the ability of class members to make an informed reasoned choice regarding their participation in the class and acceptance of the settlement. It noted the language of *Georgine v. Amchem Prods.,* 160 F.R.D. 478, 496 (E.D.Pa. 1995) which found misleading one-sided attacks on the proposed settlement without any mention of its benefits, and communications which failed to reveal to the recipient the drafter's financial motive to obtain additional opt-outs.

¶ 17 Appellants challenge the specific findings made by the trial court and its ultimate conclusion that the conduct described warranted the restrictions imposed. Upon review of the trial court's detailed opinion, we find that it made findings based upon a careful examination of the particular claims of misconduct. It identified the challenged statements and those responsible for them and explained why they were particularly misleading under the circumstances of this case. We find no grounds upon which to disturb these findings of improper conduct, or the trial court's conclusion that its restriction on communication for the second opt-out period was warranted and acceptable both under the Rule and the Constitution.

¶ 18 "In general, an order limiting communications regarding ongoing litigation between a class and class opponents will satisfy first amendment concerns if it is grounded in good cause and issued with a 'heightened sensitivity' for first amendment concerns." *Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193, 1205 (11th

Cir.1985) (citations omitted.) The trial court in its opinion recognized that a determination of good cause must be made upon consideration of "the severity and likelihood of the perceived harm; the precision with which the order is drawn; the availability of less onerous alternatives and the duration of the order." Trial Court Opinion at 113 (citing *Hampton Hardware Inc. v. Cotter & Co.*, 156 F.R.D. 630, 633 (N.D.Tex.1994) (citing *Kleiner*, 751 F.2d at 1206)).

¶ 19 Upon review we find the trial court engaged in a proper analysis and appropriately found good cause for the issuance of its order based upon the improper communications that had occurred. The trial court's order was limited in time and scope and provided that communications could be made upon review and approval of those communications by the court. Because a number of improper communications had occurred and there was appropriate concern for the integrity of the class, the trial court's order did not violate first amendment protections.

¶ 20 We are, however, troubled by claims made by Appellant, the American Medical Association ("the AMA"). The AMA acknowledges that it did not object to the class certification or the settlement and did not seek to intervene in the class action case. *See* Brief for Appellant AMA at 8. Yet, it contends that the trial court improperly impacted its first amendment rights by restricting its communications with class members. We would agree with the AMA that under the facts of this case the trial court was without authority to restrain the AMA's communications; however, we do not read the order to apply to it. The order limits certain societies and associations "and all others acting by or through them and/or on their behalf." The AMA states that it is the largest professional association of physicians in the country and is a not-for-profit corporation. *Id.* at 7. There is no indication that it acts on behalf of any of the organizations named in the court's order or through them. The AMA advises us that it refrained from sharing its opinion of the settlement with its members and elected not to print any stories about the settlement in its various publications because of the trial court's order. *Id.* at 11. We conclude that these restrictions were not warranted under the terms of the order.

¶ 21 Order affirmed. Motion to quash denied as moot.