IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Coal Tubin' PA, LLC,                      :
                        Appellant         :
                                          :
            v.                            :
                                          :
Cambria County Transit                    :      No. 1470 C.D. 2016
Authority, Ron Locher                     :      Submitted: April 6, 2017


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                                       FILED: May 12, 2017


            Coal Tubin' PA, LLC (Coal Tubin') appeals from the Cambria County
Common Pleas Court's (trial court) August 1, 2016 order dismissing Coal Tubin's
Petition to Set Aside Sale of Property (Petition).  Appellant presents two issues for
this Court's review: (1) whether the Cambria County Transit Authority (CamTran)
violated the Municipality Authorities Act (MAA)[1] by engaging in property ownership
not wholly or partially devoted to public use; and (2) whether the Cambria County
(County) taxpayers and the public were protected when the sale of the property was
awarded to a single bidder with actual knowledge of the sale and at 35% less than the
appraised value.  After review, we affirm.

_____

[1] 53 Pa.C.S. §§ 5601-5623.

## Background

Chad Gontkovic (Gontkovic) formed Coal Tubin' in December 2009. Coal Tubin' is a recreation outfitter, providing river tubing excursions, whitewater rafting, and other eco-adventures. In 2010, Coal Tubin' began leasing a building owned by CamTran located on property along the Stonycreek River at 303 Central Avenue in Johnstown, Pennsylvania. Gontkovic chose this location as it was ideally situated along the river allowing easy access for customers. Ron Locher (Locher) leased a separate building, also located at 303 Central Avenue property. Locher owns and operates Locher Excavation and Demolition which uses its building at 303 Central Avenue (Locher Building) to "move his various materials" from work sites, store vehicles during the winter, and perform work on vehicles. Notes of Testimony, July 7, 2016 (N.T.) at 8. The Locher Building was in such a state of disrepair that it was not safe to occupy.

Gontkovic, on behalf of Coal Tubin', communicated on numerous occasions with CamTran representatives that he desired to purchase the property where the Locher Building was located (Property).[2] Gontkovic first spoke with CamTran administrator Walt Hoffman (Hoffman) the first year that Coal Tubin' was in business. Gontkovic asked Hoffman what the plan was for the Property and, although Hoffman did not know, he said he would try to find out. Gontkovic met with Hoffman a few times relative to the Property's potential sale. In the spring of 2011, after Hoffman retired, Gontkovic discussed the matter with Hoffman's successor, Rose Lucy-Noll (Lucy-Noll). Gontkovic continued similar conversations with Lucy-Noll, stopping by her office every three to four months to ask about the potential of selling the Property. Lucy-Noll eventually suggested that Gontkovic

---

[2] A review of the record reveals that the "building" Locher leased and the "parcel" on which it is located are interchangeably referred to as the "Property." However, the sale in question is the sale of the "parcel" on which the Locher Building is situated. N.T. at 51.

2

attend a CamTran Board of Directors' (Board) meeting to discuss the possibility of the Property's sale.

Gontkovic attended a CamTran Board meeting sometime before November 3, 2013, spoke to the Board about Coal Tubin', and requested that Coal Tubin' be permitted to purchase the Property. CamTran's Board Chairman Ed Cernic, Jr. (Cernic) stated that CamTran was unable to sell the Property at that time, since it had been a gift to CamTran from the Glosser Foundation, and there were many options to consider. Before leaving the Board meeting, Gontkovic told the Board that he just wanted to have the option of purchasing the Property.

On November 3, 2013, after continuing to speak to some middle management at CamTran, County Commissioner Tom Chernisky (Chernisky) arranged a workshop attended by Chernisky, Gontkovic, Gontkovic's wife, Cernic, Locher and Locher's employee Jamey Goldberg. The purpose of the workshop was to devise "a solution that worked for everybody[,]" *i.e.*, Locher could obtain a new building on a better piece of land, Gontkovich could have a more feasible riverfront business location, and CamTran would no longer have to maintain dilapidated buildings. N.T. at 14. However, the parties were ultimately unable to reach an agreement. Some contention arose among them during the workshop and, as a result, Gontkovic left the meeting without the parties having developed a solution or arrived at an agreement. For the next approximately 2½ years, Gontkovic did not communicate with CamTran regarding the sale of the Property because he believed that CamTran would not be selling the Property and, if it ever were to sell, it would contact him since CamTran knew for years that he wished to purchase the Property.

More than a year after the workshop took place, the Pennsylvania Department of Transportation (PennDOT) notified Coal Tubin' that it would be replacing a nearby bridge and, in doing so, would need to tear down the building that Coal Tubin' was leasing. Coal Tubin' was assigned to Commonwealth of

3

Pennsylvania relocation representative John Castell (Castell). Coal Tubin' made Castell aware of its desire to purchase the portion of the Property that PennDOT was not taking. Castell went to a CamTran Board meeting on Coal Tubin's behalf and inquired whether CamTran would be willing to sell the Property, but was informed that CamTran would not be selling it.

Locher notified CamTran's maintenance director Bernie Walkowsky that water had begun to leak through the Locher Building's roof during snow and rain storms. In response, CamTran hired a contractor to repair the Locher Building's roof. After bringing its tools and materials to the work site, the contractor and CamTran took the steps necessary to obtain a construction permit from the City of Johnstown (City) to complete the necessary work. The City ultimately denied the permit, stating that the Locher Building had structural damage and would need to have stress work performed. CamTran hired a second contractor to assess the building in light of the newly-discovered damage. In late March or early April 2016, after receiving the second contractor's assessment and work estimate, CamTran decided to sell the Property rather than proceed with the extensive and costly work needed to make the Locher Building safe.

CamTran placed an advertisement for the Property's sale in the Tribune Democrat newspaper on Friday, April 8, 2016 and Sunday, April 10, 2016. CamTran typically places its advertisements in the Friday and Sunday papers, since those editions have the highest readership. CamTran's Property sale advertisement required that purchase bids be submitted to CamTran by April 21, 2016, approximately 11 days after the last day the advertisement appeared in the newspaper. CamTran received only one bid, which was from Locher. Locher's bid was for $31,290.00, which CamTran's Board unanimously accepted.

Gontkovic did not see the April 8 or April 10, 2016 newspaper advertisements, nor was he notified about the Property's sale from any source,

4

including friends, family or CamTran. Gontkovic was on a military deployment at the time of the advertisements. CamTran informed Locher, by way of his eviction notice, that the Property was being placed for sale and would be advertised the following week. Although Coal Tubin' was sent a similar letter notifying Coal Tubin' that it had 30 days to vacate the property, the letter made no mention of the sale. While the buildings occupied by Locher and Coal Tubin' were on the same piece of property, the building occupied by Coal Tubin' was being torn down to make way for the bridge construction while the Locher Building was the actual building being set for sale. Although the subdivision may not have taken place at the time of the sale, the one parcel owned by CamTran was to be subdivided into two parcels - the part occupied by Coal Tubin' taken by PennDOT and the part occupied by Locher set for sale.

Locher initially decided to make a bid of $25,000.00, but increased his bid to $31,290.00 after seeing Coal Tubin' employees walking the property line and mistakenly believing they were trying to determine the size of the Property in preparation of submitting a bid to CamTran. Hagerich & Son Real Estate appraised the Property (excluding PennDOT's condemned parcel) at an Estimated Market Value (EMV) of $47,400.00. Accordingly, the Property's ultimate sale price was $16,110.00 less than its EMV.

**Facts**

On May 27, 2016, Coal Tubin' filed its Petition. On July 7, 2016, the trial court held a hearing. On August 1, 2016, the trial court dismissed the Petition. Coal Tubin' did not file post trial-motions. On August 29, 2016, Coal Tubin' filed an appeal with this Court.[3] The trial court issued an order directing Coal Tubin' to file a

---

[3] "Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether an error of law was committed." *Metro.*

Pennsylvania Rule of Appellate Procedure 1925(b) statement of errors complained of on appeal (Rule 1925(b) Statement). Coal Tubin' filed its Rule 1925(b) Statement on October 19, 2016. On November 28, 2016, the trial court filed its opinion.

**Discussion**

Before reaching the merits of the case, we must determine if Coal Tubin' has preserved any issues for appeal. Pennsylvania Rule of Civil Procedure No. (Rule) 227.1(c) provides: "Post-trial motions **shall be filed** within ten days after (1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or (2) notice of nonsuit or the filing of the decision in the case of a trial without jury." Pa.R.C.P. No. 227.1(c) (emphasis added). Coal Tubin' did not file post-trial motions.

> Even though neither party has raised the issue of whether this [C]ourt has jurisdiction to consider [Coal Tubin's] appeal when it failed to preserve any issues for review by not filing post-trial motions pursuant to [Rule] 227.1, the question of appealability implicates the jurisdiction of this [C]ourt - a non-waivable matter - so that the failure of the parties to raise the issue does not prevent this [C]ourt from doing so *sua sponte.*

*Borough of Harveys Lake v. Heck,* 719 A.2d 378, 380 n.4 (Pa. Cmwlth. 1998). We acknowledge that Coal Tubin' filed a Rule 1925(b) Statement. "However, waiver due to failure to file post-trial motions will not be remedied by listing those issues in a Rule 1925(b) [S]tatement." *The Ridings at Whitpain Homeowners Ass'n v. Schiller,* 811 A.2d 1111, 1114 n.4 (Pa. Cmwlth. 2002).

The Pennsylvania Supreme Court has stated: "Under Rule 227.1, a party **must file post-trial motions** at the conclusion of a trial in *any* type of action in order

---

*Edison Co. v. City of Reading,* 125 A.3d 499, 501 n.3 (Pa. Cmwlth. 2015) (quoting *Swift v. Dep't of Transp.,* 937 A.2d 1162, 1167 n.5 (Pa. Cmwlth. 2007)).

**to preserve claims** that **the party wishes to raise on appeal**." *Chalkey v. Roush,* 805 A.2d 491, 496 (Pa. 2002) (bolded emphasis added). Our Supreme Court has further held: "If an issue has not been raised in a post-trial motion, it is waived for appeal purposes." *L.B. Foster Co. v. Lane Enters., Inc.,* 710 A.2d 55, 55 (Pa. 1998). Moreover, this Court has consistently ruled: "Where a party fails to file timely post-trial motions after a bench trial, no issues are preserved for this Court to review." *Liparota v. State Workmen's Ins. Fund,* 722 A.2d 253, 256 (Pa. Cmwlth. 1999); *see also P.S. Hysong v. Lewicki,* 931 A.2d 63, 67 (Pa. Cmwlth. 2007) (There is "overwhelming authority that the failure of an appellant to file post-trial motions in a proceeding to which [Rule] 227.1 applies results in a waiver of issues[.]"); *Schiller,* 811 A.2d at 1116 ("[The appellants] failed to file post-trial motions thus waiving their issues on appeal[.]"); *Heck,* 719 A.2d at 380 ("A party's failure to file post-trial motions results in a waiver of all issues for appellate review and requires that the appeal be dismissed."). "Consequently, when [Coal Tubin'] failed to file post-trial motions within ten days following the trial court's order, the issues it sought to raise in its [Rule 1925(b) Statement] were waived." *City of Phila. v. New Life Evangelistic Church,* 114 A.3d 472, 478-79 (Pa. Cmwlth. 2015).

We acknowledge that Coal Tubin' filed a Petition to Set Aside Sale and that statutory appeals under the Real Estate Tax Sale Law (RETSL)[4] do not require the filing of post-trial motions. *See Appeal of Borough of Churchill,* 575 A.2d 550 (Pa. 1990). However, the fact that Coal Tubin' filed a "Petition to Set Aside" does not transform the matter into a statutory appeal under the RESTL. Coal Tubin' did not request that the trial court set aside a **tax sale** or a **judicial sale**. Rather, Coal Tubin' was seeking to have the trial court declare the sale invalid because CamTran violated the MAA. "There is no jurisprudential reason for this Court to elevate form

---

[4] Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101-5860.803.

7

over substance by relying on the title of the pleading, as opposed to the relief sought therein, as conclusively determining the form of action." *Taylor v. Pa. State Police,* 132 A.3d 590, 599 (Pa. Cmwlth. 2016). Moreover, the MAA does not provide appeal provisions for the sale of property. *See* Section 5607(d)(4) of the MAA, 53 Pa.C.S. § 5607(d)(4). Thus, Coal Tubin's correct form of action would have been a declaratory judgment action alleging that the sale violated the MAA pursuant to which CamTran derived its power to sell the Property. Our Supreme Court explained:

> The venerable purpose of the post-trial motion procedure is to permit the trial court to correct its own errors before appellate review is commenced. Allowing parties to bypass such procedures in declaratory judgment actions would deprive the trial court of this critical gatekeeping function, while doing little to expedite appellate review. In addition, excepting declaratory judgment orders from the plain language of Rule 227.1 would unnecessarily complicate application of that rule and result in further confusion among litigants and the lower courts. Accordingly, we hold that post-trial declaratory judgment orders, just like other post-trial orders, are subject to the post-trial motion procedures in Rule 227.1.

*Motorists Mut. Ins. Co. v. Pinkerton,* 830 A.2d 958, 964 (Pa. 2003) (citation and footnote omitted).

Due to its failure to file post-trial motions, Coal Tubin' has waived all issues on appeal.[5] Accordingly, the trial court's order is affirmed.

 

 

_____
ANNE E. COVEY, Judge

---

[5] Based upon this holding, we need not reach the merits of Coal Tubin's appeal. Notwithstanding, this Court has reviewed the trial court's decision and discerns no error in its reasoning.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Coal Tubin' PA, LLC,            :
           Appellant        :
           :
           v.             :
           :
Cambria County Transit        :     No. 1470 C.D. 2016
Authority, Ron Locher         :

## O R D E R

AND NOW, this 12ᵗʰ day of May, 2017, the Cambria County Common Pleas Court's August 1, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge