IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Twuan Harris,                    :
              Appellant   :
                        :
        v.                 :
                        :
Pennsylvania Department   :  No. 1166 C.D. 2024
of Corrections             :  Submitted: December 8, 2025

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE MATTHEW S. WOLF, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: January 28, 2026


Twuan Harris (Harris) appeals from a July 16, 2024 Order of the Court of Common Pleas of Mercer County (Trial Court). Following a bench trial on Harris's Pennsylvania Human Relations Act (PHRA) claims, the Trial Court ruled in favor of the Department of Corrections on all counts. Upon review, we dismiss the appeal.

## I. Background

In 2007, Harris—an African-American male—began working for the Department of Corrections (DOC) at the State Correctional Institute at Pittsburgh (SCI-Pittsburgh) as a Corrections Officer 1 (CO1). Reproduced Record (R.R.) at 79 & 81.[1] As a CO1, Harris was primarily responsible for providing care to, and

---

[1] The page numbers in Harris's Reproduced Record lack the lowercase "a" required by Rule 2173 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2173. For consistency, we refer to specific page numbers as they appear, albeit incorrectly, in the Reproduced Record.

maintaining custody and control of, inmates. Harris's Br. at 7. When SCI-Pittsburgh closed in 2017, Harris was transferred to SCI-Mercer, but he remained a resident of Pittsburgh. R.R. at 9-10. However, Harris was informed during his orientation that inmates with medical issues would be transferred to hospitals in Pittsburgh and that he could be assigned shifts where he would report directly to the hospitals instead of commuting to Mercer. *Id* at 10.[2]

At SCI-Mercer, Harris was supervised by several white shift commanders. Harris's Br. at 7-8. The DOC shift commanders were responsible for maintaining the DOC's mandatory overtime system which required CO1s to work additional hours beyond their regular shifts during staff shortages to ensure facility safety. R.R. at 554. The mandatory overtime system operated by seniority-based rotation; once an officer completed mandated overtime hours, the officer's name moved to the bottom of the list. *Id*. Conversely, if an officer failed to complete the mandated overtime hours, the officer would be repeatedly called upon until the requisite duty had been fulfilled. *Id*. Officers who refuse mandates are subject to a series of progressive reprimands. *Id*. at 560. CO1s who refuse their mandates first receive informal counseling, followed by verbal and written reprimands, and finally a pre-disciplinary conference (PDC), which may lead to suspension or termination. *Id*. at 560-61.

On August 16, 2018, Harris received a written reprimand for refusing two mandates on June 18, 2018, and July 2, 2018, respectively. R.R. at 523. Harris was thereafter subjected to his first PDC for three more mandate refusals in 2018,

---

[2] The findings of fact note that "***when*** [Harris] was assigned to guard prisoners at a hospital in Pittsburgh, he would report directly to the hospital for duty rather than commute to Mercer." R.R. at 10 (emphasis added). Thus, it does not appear from the record that this arrangement was ever guaranteed to Harris to convenience him as a Pittsburgh resident.

one of which was an absence without official leave (AWOL). *Id.* at 524. As a result, Harris received a 3-day suspension without pay, set to begin on February 27, 2019. DOC's Br. at 8.

On January 7, 2019, Harris filed an internal complaint with the Office of Equal Employment Opportunity (EEO) and alleged racial discrimination on the grounds of his diminished hospital assignments and his mandate refusal punishments. R.R. at 729; *see also* Trial Ct. Op., 7/16/24 at 1-2. While this investigation was pending, Harris refused two more mandates and filed a second EEO complaint on June 14, 2019. Trial Ct. Op., 7/16/24 at 2. He was thereafter subjected to a second PDC for such refusals, for which he received a 5-day suspension without pay due to a failure to correct his prior behavior. R.R. at 524; DOC's Br. at 8.

Harris received his third PDC for refusing three more mandates in 2019. R.R. at 524. During this PDC, Harris was issued a 10-day suspension without pay due to his continual insubordination with "no regard for his continued abuses." DOC's Br. at 9-10. Upon refusing another mandate on December 14, 2019, Harris received his fourth and final PDC. R.R. at 524. On April 23, 2020, the DOC terminated Harris via letter after a total of 11 mandate refusals over an 18-month period. *Id*. at 816-17; *see also id.* at 525.[3]

On June 3, 2020, Harris filed discrimination charges with the Pennsylvania Human Relations Commission (PHRC) and the Equal Employment Opportunity Commission. R.R. at 818-24. However, the PHRC closed Harris's complaint once he filed a complaint with the Trial Court. *Id*. at 833. In his Trial

---

[3] Harris had 11 mandate refusals plus one AWOL. R.R. at 526. While Harris argues that the AWOL was unsubstantiated, he was disciplined for abandoning his post. *Id.*

3

Court complaint against the DOC, Harris raised several PHRA claims,[4] alleging Unlawful Termination, Retaliation, and Hostile Work Environment due to his race. Trial Ct. Op., 7/16/24 at 1. The parties each submitted Proposed Findings of Fact and Conclusions of Law before participating in a three-day bench trial on Harris's claims. *Id.*

On July 16, 2024, the Trial Court ruled in favor of the DOC on all counts and entered a verdict in favor of the DOC.[5] Trial Ct. Op., 7/16/24 at 13-14. However, the Trial Court mistakenly sent its verdict to attorneys who were not involved in the action, and Harris did not receive the verdict until August 15, 2024. Harris's Br. at 28. As a result of the miscommunication, the Trial Court issued an order on August 15, 2024, "for the sake of clarity" and decreed that "the Verdict heretofore rendered . . . was duly signed and recorded on . . . August 12, 2024" R.R. at 1093. Harris received the August 15, 2024 Order on August 17, then filed a notice of appeal with this Court on September 4, 2024, without first filing any motions for post-trial relief because he believed that the ten-day deadline for post-trial motions had passed. After the notice of appeal had been filed, the DOC filed a praecipe to enter judgment in favor of the DOC, which was granted by the Trial Court on November 7, 2024. *Id.* at 1091.

Upon review of the record, this Court issued an order concerning the absence of post-trial motions on the Trial Court docket and required that the parties

---

[4] Act of October 27, 1955, P.L.744, *as amended*, 43 P.S. §§ 951-963.

[5] While this verdict was duly signed and recorded on August 12, 2024, pursuant to the Trial Court's August 15, 2024 Order, this Opinion refers to the original July 16, 2024 date for clarity purposes.

address the matter in their principal briefs on the merits or by motion.  R.R. at 1111-12.

## II. Issues

Before this Court, Harris argues that the Trial Court committed an error of law when it determined that he presented insufficient evidence to establish both (1) a *prima facie* case of racial discrimination arising from his termination and (2) a pretextual purpose in the non-discriminatory termination rationale proffered by the DOC.  Harris's Br. at 4.  Harris maintains that the legal framework applicable to cases that rely on circumstantial evidence to prove discrimination does not require direct evidence of such discrimination for an individual to succeed on their claim. *Id.* at 32.  Further, Harris contests the Trial Court's rationale that his "repeated insubordination and refusal to work mandatory overtime as assigned" invalidated any potential pretextual discriminatory action by the DOC.  *Id*. at 41; *see also* Trial Court Op., 7/16/24 at 12-13.  Thus, Harris requests that this Court reverse the holdings of the Trial Court and remand for a determination of damages.  Harris's Br. at 46.

In response to this Court's directive, Harris argues that the issues raised were preserved for appeal due to the "extraordinary circumstances" surrounding the Trial Court's miscommunication and subsequent August 15, 2024 Order.  Harris's Br. at 27.  Specifically, Harris asserts that his failure to file a post-trial motion should be excused because the Trial Court's August 15, 2024 Order created ambiguity as to whether the deadline for filing post-trial motions had already expired based on the July 16, 2024 verdict.  *Id*.  He further argues in the alternative that the Trial Court issued a judgment in favor of the DOC prior to the expiration of the ten-day period to file post-trial motions, thus rendering it premature and void.  *Id*.

The DOC primarily addresses this Court's order in its brief and argues that Harris failed to preserve any issues for appeal because a "plain review" of the Trial Court docket does not reveal any extraordinary circumstances that could excuse Harris's non-compliance with procedure. DOC's Br. at 12. The DOC also maintains that the Trial Court's verdict was supported by competent evidence and that Harris's argument impermissibly requests this Court to reweigh the evidence. *Id.* Thus, the DOC contends that the Trial Court's July 16, 2024 Order must be affirmed. *Id.* at 13.

## III. Discussion

### Failure to File Post-Trial Motion

Rule 227.1(c) of the Pennsylvania Rules of Civil Procedure provides that "[p]ost-trial motions ***shall*** be filed within ten days after . . . the filing of the decision in the case of a trial without jury." Pa.R.Civ.P. 227.1(c)(2). The use of "shall" establishes mandatory action to be taken by parties prior to commencing an appeal, and this duty is further reflected in Pennsylvania jurisprudence. In *Motorists Mutual Insurance Company v. Pinkerton*, 830 A.2d 958, 964 (Pa. 2003), the Pennsylvania Supreme Court stated that "parties who wish to appeal ***must first*** file post-trial motions." *Id.* (emphasis added). "Must"—like "shall"—is not permissive language. Therefore, the inverse of the Supreme Court's statement in *Motorists Mutual Insurance Company*, 830 A.2d at 964, must be true as well: if a party does not first file post-trial motions, the party cannot appeal, thereby requiring dismissal of the appeal.[6]

---

[6] Many Pennsylvania cases have taken such an approach upon a party's failure to file post-trial motions. *See, e.g. Smith v. Ivy Lee Real Estate, LLC*, 326 A.3d 1064, 1071 (Pa. Cmwlth.

"The venerable purpose of the post-trial motion procedure is to permit the trial court to correct its own errors before appellate review is commenced." *Motorists Mut. Ins. Co.*, 830 A.2d at 964. This ensures that the trial court has "an opportunity to correct errors in its ruling and avert the need for appellate review." *Chalkey v. Roush*, 805 A.2d 491, 494 n.9 (Pa. 2002). While "[a] party's failure to file post-trial motions does not deprive the appellate court of its jurisdiction to hear the appeal," the Pennsylvania Superior Court has explained that "an issue [that] has not been raised in a post-trial motion . . . is waived for appeal purposes." *Chongqing Kangning Bioengineering Co. v. Conrex Pharm. Corp.*, 327 A.3d 209, 214 (Pa. Super. 2024);[7] *L.B. Foster Co. v. Lane Enters., Inc.,* 710 A.2d 55 (Pa. 1998).

> Under Rule 227.1, a party must file post-trial motions at the conclusion of a trial in any type of action in order to preserve claims that the party wishes to raise on appeal . . . ***If an issue has not been raised in a post-trial motion, it is waived for appeal purposes.*** Moreover, this Court has consistently ruled: "Where a party fails to file timely post-

2024) ("Appellee correctly notes that failure to file a motion for post-trial relief results in a waiver of all issues for appellate review and requires that the appeal be dismissed."); *Greer v. S. Franklin Twp.*, 329 A.3d 476 (Pa. Cmwlth. 2024) ("Township's failure to file post-trial motions waived its issues for appeal . . . Accordingly, we dismiss this appeal without reaching the merits of the underlying claims."); *Auto Shower II, Inc. v. Juszczak*, 220 A.3d 1214 (Pa. Cmwlth. 2019) ("[W]e conclude Owners' failure to file post-trial motions resulted in waiver. Accordingly, this Court dismisses Owners' appeal."); *Cooper v. Dep't of Corr.*, 154 A.3d 455 (Pa. Cmwlth. 2016) ("Because Cooper did not file post-trial motions, we must conclude that all his issues have been waived for appellate review. Accordingly, the appeal is dismissed[.]"); *In re Contest of Election of November 4*, 858 A.2d 143, 146 (Pa. Cmwlth. 2004) ("'Grounds not specified by a party in post-trial motions pursuant to Rule 227.1 shall be deemed waived on appellate review.' Accordingly, we must dismiss this appeal as all issues have been waived on appellate review."); *Borough of Harveys Lake v. Heck*, 719 A.2d 378, 380 (Pa. Cmwlth. 1998) (dismissing the appeal for failure to file requisite post-trial motions).

[7] *See Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018) (permitting citation of Superior Court cases as persuasive authority where they address analogous issues).

7

> trial motions after a bench trial, no issues are preserved for this Court to review." Consequently, when [Coal Tubin'] failed to file post-trial motions within ten days following the trial court's order, the issues it sought to raise in its [Rule 1925(b) Statement] were waived.

*Coal Tubin' Pa, LLC v. Cambria Cnty. Transit. Auth.,* 162 A.3d 549, 553 (Pa. Cmwlth. 2017) (quoting *Liparota v. State Workmen's Ins. Fund*, 722 A.2d 253, 256 (Pa. Cmwlth. 1999) (emphasis added) (internal quotation marks and citations omitted)).

Here, Harris filed no post-trial motions in the instant matter and instead filed a premature notice of appeal to this Court on September 4, 2024. *See* R.R. at 1094-95. This premature appeal was subsequently made timely pursuant to Rule 905(a)(5) of the Pennsylvania Rules of Appellate Procedure upon the Trial Court's entry of judgment against Harris on November 7, 2024. *Id.* at 1091; Pa.R.A.P. 905(a)(5).[8] By way of explanation for his failure to file post-trial motions, Harris argues that there were "extenuating circumstances" because the Trial Court's August 15, 2024 Order created ambiguity as to whether the July 16, 2024 deadline was amended for such motions. Harris's Br. at 28. Harris's argument is meritless.

The Trial Court issued its August 15, 2024 Order "for the sake of clarity and the proper administration of justice" upon discovering that the verdict was sent to attorneys that were not involved in this matter. R.R. at 1093; *see also* DOC's Br.

---

[8] Rule 905(a)(5) of the Pennsylvania Rules of Appellate Procedure provides that, "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Pa.R.A.P. 905(a)(5). Rule 905(a)(5), Pa.R.A.P.(a)(5), "does not abrogate the requirements of finality," but instead "perfect[s] a premature appeal 'where an appeal is filed after a trial court makes a final determination, but before the official act of entering judgment has been performed.'" *Perry v. Erie Cty.*, 169 A.3d 1232, 1238 (Pa. Cmwlth. 2017) (quoting *Pa. Orthopaedic Soc'y v. Indep. Blue Cross*, 885 A.2d 542, 546 (Pa. Super. 2005)).

8

at 15. This language, evidenced further by the fact that the Trial Court "duly signed and recorded" and docketed the matter on August 12, clearly purports to allow counsel to act as if the operative date of the verdict was August 12 instead of July 16. *Id*. at 5 &1093. However, if Harris was truly concerned about the post-trial motions being late, he could have filed a motion for leave to file the post-trial motion *nunc pro tunc*. *See Triple Crown Corp. v. Lower Allen Twp.*, 327 A.3d 748, 753 & 757 (Pa. Cmwlth. 2024) (evaluating the propriety of *nunc pro tunc* relief where party filed a motion for leave to file post-trial motions *nunc pro tunc* after a procedural misunderstanding); *Kurtas v. Kurtas*, 555 A.2d 804, 806 (Pa. 1989) ("So long as the court has jurisdiction, it can exercise its equitable powers to hear untimely post-trial motions."). As such, there is no justification for Harris's failure to file post-trial motions simply because he believed the 10-day deadline had passed. Therefore, because Rule 227.1(c), Pa.R.Civ.P. 2271(c), prescribes the filing of post-trial motions to preserve issues on appeal and Harris failed to do so, no issues have been preserved for the consideration of this Court.[9] *See Siegfried v. Borough of Wilson*, 695 A.2d 892, 895 (Pa. Cmwlth. 1997); *L.B. Foster Co.,*710 A.2d at 55; *Liparota,* 722 A.2d at 256.

---

[9] This Court declines to consider Harris's alternative argument that the Trial Court's judgment was premature and void because the argument lacks merit. Harris's Br. at 27. An appeal must be quashed if a judgment is premature and void, such that the trial court entered judgment prior to the disposition of timely filed post-trial motions. *See Shonberger v. Oswell*, 530 A.2d 112, 113 n.1 (Pa. Super. 1987); *Murphy v. Brong*, 468 A.2d 509, 511 (Pa. Super. 1983). Here, Harris does not claim that his failure to file post-trial motions was the result of the alleged "premature" judgment. Moreover, Harris is the one who inhibited disposition of timely filed post-trial motions by filing a notice of appeal instead of the requisite motions.

## IV. Conclusion

Based on the foregoing reasons, this Court concludes that Harris has waived all issues presented on appeal due to his failure to file post-trial motions. Accordingly, we dismiss the appeal.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Twuan Harris, :
                Appellant :
 :
       v. :
 :
Pennsylvania Department : No. 1166 C.D. 2024
of Corrections :

## **O R D E R**

AND NOW, this 28th day of January, 2026, Harris's appeal from the July 16, 2024 Order of the Court of Common Pleas of Mercer County is DISMISSED.

 

 

_____
CHRISTINE FIZZANO CANNON, Judge